The final case of the call today is case number 124825, Assettura v. Vacationland, Inc., agenda number seven. If you're ready, you may proceed. Thank you. May it please the Court, my name is Dmitry Filofanov. I present the plaintiffs in this case, Kim Assettura and Adam Wozniak. My problem with this case is that I got the wrong Wozniak for the client. If I had Steve Wozniak, $5,000 for him would be pocket change. For Adam, $25,000 is a substantial amount of money. So when he bought the RV to spend the summer with his family, and a week, a week again, by August, he said, enough, there is no point in this, and that is why we're here. Now I, as I was waiting for the, for my turn, and worried about the hotel checkout, I was talking to the gentlemen in the hall, and they said, well, they're trying to figure out the timing for my presentation. They said, well, the criminal cases guys, they speak very little, but the civil case guys, they talk and talk and talk because they can get to deal with their clients. I'm a contingency case. There's only so many ways I can say clear and simple interpretation, plain reading of the text, inference that the term is mentioned in one provision of the law, and it's not in another. There is a kind of a presumption that the legislature perhaps did not mean to put it there, uniformity of the law. There is only so many things, so many ways I can say that, and I think I said it about two dozen times in the briefs, and there is really no way I can indulge myself in repeating the same things to the court, and therefore, I would pretty much spend on the briefs, which I think are extensive, and present the position of both parties relatively clear. At least I hope it's clear, and so consequently, rather than regurgitate what I wrote in the briefs, I would say that we stand on the briefs and that the court has any questions as far as the factual circumstances of the case. If it's of that matter, any legal points that need discussion, I would be more than happy to attempt to answer them. The only thing that I would add to that is the issue that kind of popped out of nowhere as a result of the briefing, which is the interpretation of the Illinois Lemon Law, or as they call it, the Equal Protection Act. As you know, that was not the issue that I raised in the PLA for strategic reasons, because I was hoping that the general UCC issue would pique your interest, but the defendant opened the door, and that, as far as I understand the law, the decision to address that issue really changed the legal landscape of the state in that particular area, and therefore, even though technically I think it's not before this court, perhaps in the exercise of your supervisory authority, you could somehow address it, because even though for me, as a Lemon Law lawyer, the change of the law is advantageous, it is highly not advantageous to my clients, and actually, I think it's wrong legally, and therefore, even though I am torn and conflicted because I like what they wrote for my other cases, for this particular case, it's not advantageous, and it actually, I think, is wrong. With that... Well, let me ask you a question. Even if the state doesn't require the buyer to allow the seller to cure, can the buyer still elect to do so? And in this case, is that what happened? Did that happen here? Yeah, they attempted to. I think the law talks about cure and adjustments. Yeah, and I think that's what happened, but it's kind of a... There is a real... It's kind of intertwined as far as the different theories are concerned, because one of the issues in this case, and the reason the repairs were undertaken in this case is because the dealer, the dealer, did not disclaim its implied warrants of merchantability, and so under that warranty, the dealer had an obligation to repair. So it depends on how you call it. Whether you call it cure under 608, or you could call it pre-existing legal obligation to repair under the implied warrants of merchantability. They claimed that they did not have the implied warrants of merchantability. That was one of the issues in the case, and we went back and forth and back and forth, until I finally convinced the court below that when there is no proper disclaimer, in big letters that say as is, and mention merchantability, there is no disclaimer of the implied warrants of merchantability, and therefore it attached. So yeah, they can, but that's an accommodation on their part. It doesn't mean that... I understand the importance of your question. Here's the crucial difference. When the warrantor, meaning the dealer, and their agent to which they want to send it over because they are incapable of complying with their warranty, and they figure somebody else would do a better job. When both of those parties say, oh, we don't know when we're going to repair it, and it's over two for a summer product, at that point I think reasonably a person could say, well, enough is enough. So as a matter of fact, there were repairs undertaken. In this case, they patiently waited and played along. As car dealers call it, work with me. That is the term of our... I always laugh at that because they really don't mean that, but that's what they say. They worked with them for a while. But when both the warrantor, which is the seller, and the manufacturer, which is a completely unrelated party, but presumably with more expertise, when both of them said, and the record is uncontradictive. The only record is the affidavit of the wrong was in the record. When both of them said, we don't know whether we can or when we're going to fix it, at that point he said no. So the answer to your question is, yes, they can, but in this particular case, the circumstances were different because they were told, we are breaching the warranty. We don't know when we can, even when we can fix it, and at that point, that constitutes potentially impairment of value under Section 608 of the Commercial Code, and people are entitled to revoke. But it's your position primarily that Section B does not require an opportunity to cure? Yes. My position is that, as my life is non-existent, exclusio unis est exclusio alteris. It's framed in the reading of the statute, which decreases transaction costs in business transactions. Many times I do car work. That's all I do. Many times people call me, crappy car, we don't know what to do, and for some reason or another, I cannot take their case. I tell them, well, here's Section 608. Yeah, it will injure you up the next day. Yeah, you probably should be able to undo this. Go read 608, go to the library, read it. It tells you what to do. Now, if you read it, it's not there. If you have to have a convoluted, hyper-technical interpretation, which requires you to look at 603 or maybe 508, I think it's in one of my footnotes in the original brief, one of the commentators says, well, maybe the other duties and obligations are from 603, or maybe they're from 508. They don't know themselves. It's convoluted. It's not clear and simple. It increases transaction costs for business transactions, and I think the idea is, and I shoot myself in the foot for doing that, but we want those things to be done in part without lawyers. When regular people can, you know, UCC provides for self-help remedies in lots of provisions. The vacation is a self-help remedy. The self-help repo is a self-help repo. If there's a wrong repo, then you go to court, but that's why people go to my clients in the middle of the night and take their car. Self-help. UCC provides for self-help. We want the statutory provisions to be understandable and not something that they will have to go to the Supreme Court to figure out. Counsel, I want to understand your answer to Justice Garmon's first question. The defendant posits, right, that if 601B doesn't include the seller's right to cure, it doesn't matter because the buyer and the seller agreed to allow the seller the opportunity to cure. And in your papers, don't you contest the fact that that agreement was ever made? I do. Okay. Can you give the basis of that again? I think you touched upon it. Well, yeah, because they use words such as offer and acceptance, but as I wrote in my brief, miraculously absent from that is the word consideration. There was no contract. They had a preexisting legal obligation under their implied warrants of merchantability to fix things. What contract? There was no contract. And besides, the basis for the location occurs at sale, not a couple of months later after their attempts to repair it under warrants have failed and they said we don't know when we are going to be able to do it. It's a very invasive legal argument to conjure up a contract where no contract exists. And what's the consideration for that contract? I've never explained it. There was no bargain. They worked with them. The thing leaked, they brought it in, please fix it, please fix it, please fix it. When they said we don't know when we can, and by the way, we're sending it out of state, and they don't know when they can. I should have been getting summary judgments on the breach of warranty, not the breach of summary judgment against me, because I think when you have a warranty and the warrant there says we don't know when we're going to fix it or whether we're going to fix it at all, that's a breach of warranty. And breach of warranty is in the most, even in the most restrictive interpretation, a breach of warranty is one of the basis for final substantial impairment. Now, it's not one, it's not the only basis. And the case, I believe, out of the fourth district, the classic case called Rankinship, stands for the proposition that you don't even have to have a breach of warranty to have substantial impairment of value. That allows you to revoke, because their example is you buy a car that has no engine. Well, there is a warranty of description. When you buy an automobile, it's supposed to have an engine in it. If it doesn't, it really doesn't qualify as an automobile. And therefore, it is sufficient breach of warranty of description to allow substantial impairment. So the point is that the breach of warranty is sufficient but not necessary to find substantial impairment. In this particular case, the substantial impairment was an unrepaired leak with no prospect of fixing it. What answer? There are no other questions? Do you have anything else? No, Mr. Chief Justice. Thank you. Thank you. Mr. Porter? May it please the Court. My name is Dan Porter, and I represent the seller, Appli, Vacationland Incorporated. UCC Section 608.1b provides that a seller has a right to cure in the event a purchaser revokes goods after accepting them. The position taken by the appellant is based on a simplistic and flawed analysis that courts recently addressing this issue have rejected. Simply put, it is not enough to say that Section 1A contains the word cure and Section 1B does not. Section 1A does not actually grant a right to cure. The cure mentioned in Section 1A merely references the understanding of the parties where a purchaser accepts goods based upon a seller's reassurance that a known defect will be cured. Thus, the reference to cure in Section 1A is not a right created by contract or by the statute, but rather a right created by the understanding of the parties. Appellant's position and the court's previously taking that position ignore Section 3 of 608. Section 3 of 608 states that a buyer who so revokes has the same rights and duties with regard to the goods as if he had rejected them. Section 3's scope is not limited to Subsection 1A or Subsection 1B. Section 3 expressly incorporates a buyer's duties in cases of rejection. One of buyer's primary duties is found in Section 2508, which requires the buyer to give a seller a reasonable opportunity to cure. Not only does this interpretation find support in the plain and ordinary meaning of Section 608, but it is also supported by the spirit and intent of the code, the more recent case law from other jurisdictions addressing this issue, and the committee comments to Section 608. The code provides general obligations of both parties in commercial transactions under Article I. Section 1103 of the code states that the code must be liberally construed and applied to promote its underlying principles, which are to simplify, clarify, and modernize the law regarding commercial transactions to permit the continued expansion of commercial practices through custom, usage, and agreement, and to make uniform the law among various jurisdictions. How would you have us, under your theory, how would you have us construe a seasonable cure? The code defines seasonable under Section 1205, and an action is seasonable if it is taken at or within the time agreed to, or within a reasonable time. And reasonableness depends on the nature, purpose, and circumstances of the action. Does it make sense to require that you at least have an estimate of the time it will take to cure? So one of the analogies I propose in my briefs is that the New Vehicle Buyer Protection Act in Illinois provides a bright-line test for what reasonable opportunity to cure is. I'm not asking the court to adopt a bright-line standard here. The reasonableness standard would suffice, but the fact that a time for cure is not estimated shouldn't preclude that opportunity to cure, because each good and the facts surrounding a bargain have different circumstances that have to be taken into consideration. It would be inappropriate to set the rule that a time to cure must be provided when a seller attempts to cure. Are you suggesting that the fact pattern here falls under 1A rather than 1B? That would be a disingenuous suggestion, because the defect admittedly was not discovered by the buyer until after the fact. It does have some hints of Section 1A, because the buyer did bring the good back to the seller. The buyer did ask for a cure at that time. And it is arguable that what started as a situation under Section 1A then became a situation under 1A. So those might be fact issues in each case. Correct. But in terms of the interpretation of the statute, just straight up the statute, certainly there's a distinction between A and B, separated by or. Correct? Correct. And you agree that in B there's nothing about seasonably cured in the language of B? Correct. But you're saying somehow the facts here mean that we're not going to be looking at B? Is that your argument? No, my argument is that even looking at B, It doesn't have to be read into it, essentially. You have to read the statute as a whole. Is that what you're saying? The plain language of Subsection 3, read as is, does incorporate the statute as a whole and specifically Section 508, which provides that a seller has a right to cure if the seller seasonably notifies the buyer and will have a further reasonable time to substitute a conforming tender. How do you respond to the plaintiff's analogy that 1A applies if you buy something and you know, if they bought it and they knew it leaked and they promised, well, we're going to fix it, that's A. But if you buy something and you think it's fine and you can use it for the summer for camping and then you go out and find what happened here, that's B. Then you can just reject it. Correct. So the understanding at the time of purchase under 1A is that both parties are aware of the defect. Both parties are working together to make sure that the buyer is made whole due to that defect. 1B, the buyer is not aware of the defect, but neither is the seller who in good faith is tendering goods that they believe to be conforming under the contract. So it would not satisfy the intention of the UCC to promote commercial transactions and to allow parties to work out disputes between themselves if a seller was not able to cure a subsequently discovered defect that when it sold the goods it did not believe existed either. Where is that clean hands, good faith kind of issue that you're discussing about the seller? How does that fit into the statute? Where is the language of that? That is under Article I, Section 302. The Uniform Commercial Code imposes throughout obligations of good faith and fair dealing, reasonableness, and care. And that section specifically states that those duties cannot be varied by agreement of the parties. So those are permeated throughout the code. Those are obligations on both parties. And specifically to this case, it was not good faith for the buyer to revoke their acceptance after they brought the good into the seller, requested the repairs, and only waited two weeks to get those repairs before they revoked their acceptance. You indicate that subparagraph 3 would then incorporate 2508. The title of 2508 is cured by seller of improper tender or delivery. Do we have an improper tender here when you have a defect that's discovered well after? And then subparagraph 1 gives the seller the opportunity to seasonably notify the buyer to cure and may then do so within the contract time to make the form of delivery. Does that all fall into this fact situation? Obviously the goods had been tendered by the time the defect was discovered. And they weren't rejected. They were not rejected because there was no known defect at the time. Subparagraph 1 of 2508 indicates where tender or delivery by the seller is rejected. So then how does 2508 apply under subsection 3 above? So subsection 2 to 508 talks about where a buyer rejects a nonconforming tender, which the seller had reasonable grounds to believe would be acceptable. That is the subsection that we're proceeding under because that is the situation here. The buyer discovered the defect and then revoked or rejected the nonconforming tender. And I understand there's a distinction between rejection and revocation, and that's based on timing of when the deal occurred. But even in the case cited by appellants from Alabama Supreme Court in 1985, the American Honda case, the chief justice dissenting in that opinion stated that revocation of acceptance can be viewed as a delayed rejection, which would give rise to the same right of the seller to cure certain defects. So the interpretation here is that subsection 2 of 508 would be revocation or a delayed rejection upon discovery of a defect, which neither party considered at the time of the sale. And it's a balancing act to make sure that the buyer has rights, which they can then invoke if the attempts at cure are not seasonable. Let's talk about cure vis-a-vis defect. How do you address the plaintiff's point that cure doesn't necessarily mean repair? Repair may be in cases of minor defects. He would suggest that if we get to whether there was a right to cure, in cases of grossly nonconforming goods, cure should be replacement with conforming goods. I have no argument with that analysis. The only issue I take here is that this factual situation we have, where there was a leak in a dinette area that was brought in, that was curable by repair. There was not, at least based on what the facts are of this case, there was not such a defect that a substitute good had to be tendered. So the idea that the court could impose some kind of standard for a minor versus a major defect, which, again, depends on the facts and circumstances of the case, of the good, and of the contract, that's no problem. Well, but the facts of this case, how do we determine minor versus major? Plaintiffs brought the RV to defendant for repair on July 14th of 2014, right? Correct. And the defendant told plaintiffs the RV needed to be sent to the manufacturer for repair but could not estimate how long the repair would take. Is that correct? And then on August 2nd, the plaintiffs revoked the acceptance of the RV. So in this case, I mean, they buy an RV presumably to use for the summer. They don't even know when they're getting it back. Does that constitute a major or minor repair or not? I mean, what goes into the assessment of what's minor and major? Do the facts play any role in that? I think it's the nature of the defect itself and whether that substantially impairs the good to the buyer. And the substantial impairment standard under 608, that's a subjective standard. So the problem with that subjective standard is any good that a buyer finds a defect in and can craft an argument and say, this substantially affects the value of this good to me, that would give the buyer the right to revoke their acceptance and win a trial at the end of the day. And that is not the type of balance and equity that the UCC seeks to strike. Is that a factual question? The substantial impairment standard is a factual question to be determined at trial. But the court here, the appellate court and the trial court, both found that they did not need to reach that standard because as a matter of law, the situation showed that the buyer did not give the seller a reasonable opportunity to cure. Thank you. UCC Article 1, Section 304 provides every contractor duty within the Act imposes an obligation of good faith and performance. I'm sorry, back to the appellate court. They relied on Belfour and Mylock to come up with that, right? Correct. But this is the first time that the interplay of 1A and 1B are addressed, right? Those two cases did not determine, based on 1A and 1B, if there was a right to cure, right? That's correct. I would further that by saying that the Belfour situation, the defect in Belfour was a subsequently discovered defect. There was an issue with the engine and the engine blew up. In that case, the court said it was a subsequent defect. The seller had a right to cure under Illinois law, and they did not differentiate between 1A or 1B of the statute, but they said before revocation was proper, the seller had a right to cure. Again, that's further evidenced in the New Vehicle Buyer Protection Act where the Illinois legislature enacted that act to be a consumer protection statute. That act, the seller gets four cure attempts of the same defect or up to 30 days to cure a defect, and I'm not saying that the court here should supplant those standards into 608, but I am saying that the intent of the legislature, even in a consumer protection statute, evidence is that they wanted to give sellers the right to cure defects before buyers could revoke. Should we look at the plain language of the statute that doesn't use that language? You're asking us to write in this other legislation into 608B? Well, the argument is that the cure granted in or the cure mentioned in 1A isn't a right that's granted by that section. It's just mentioned, and subsection 3 incorporates the rights and duties of buyers under other sections of the code, which include the duty of a buyer to allow a seller to cure a defect, seasonably, of course. They wouldn't have had to put it in A either, right? They put it in A because that was the understanding of the parties at the time of acceptance of the good. So they put it in A because that was something that the parties contemplated at the time. What about the analysis that if it's in one section of the statute and not in the other, that the legislature intentionally left it out? How do we address that? Sure. I would direct the court to the committee comments of section 608, which lend further interpretive analysis to these subsections. Comment 4 of 608 states that courts should resort to revocation of acceptance only after attempts at adjustment have failed. Comment 4 doesn't specifically limit itself to subsection 1A or 1B. And in addition, comment 5 states that considerations of good faith, prevention of surprise, and reasonable adjustment are all considerations the court should give in the revocation of acceptance context. So prevention of surprise. Here we had a buyer who brought goods back requesting a seller to repair them, and then within two weeks after the buyer had undertaken to effectuate those repairs and sent the vehicle out to the manufacturer in Indiana to do those repairs, at that time, two weeks the second district found and the trial court found was not a reasonable time for that cure. That was a surprise. That was not within the spirit and intent of the UCC. Counsel, I'm confused on the facts, and I thought they brought it back to you on July 14th, and it wasn't until late September when they sent the letter revoking acceptance. Your Honor, there was a... The buyers brought the vehicle in on July 14th. There was a subsequent discussion with the buyers and the sellers where on or before August 2nd were the buyers verbally revoked acceptance. The letter from plaintiff's attorney revoking acceptance did not come until September 28th of 2014, and actually on September 23rd of 2014, the sellers had received the RV back fully repaired and had notified the buyers that they could come pick it up at any time. So we have this buyers bring it in, buyers ask for repair, then buyers revoke acceptance two weeks later after seller sends it out to the manufacturer to do those repairs. Seller gets it back from the manufacturer and notifies the buyers, and then buyers have their attorney send a letter formally revoking acceptance. Why isn't a reasonable reading of A and B that A, I think, is already to discuss? The buyer and the seller both know about the leaks, and they agree to have it fixed, right? So there is the right to cure, they knew about it. Why didn't the legislature maybe in B say, okay, if it's discovered later, who is best to bear the brunt of that? And they say it falls on the seller, that the seller at least could be argued more reasonably had the right to check beforehand, maybe should have known about it. Why isn't that a reasonable reading of A and B, and why there would be no right to cure in B? It's not a reasonable reading because, again, the spirit and intent of the code is to balance the interests of the parties. And as you mentioned, Your Honor, the subsequently discovered defect is a defect that neither party knew about at the time. Even if the buyer potentially could have a better opportunity to inspect it, that has to be a burden placed on, I'm sorry, if the seller had a reasonable opportunity to inspect it, that has to be a burden placed on the buyer as well to some degree. And when neither party is aware of or has any reason to believe that there's a defect, both parties should be required to at least make an attempt to work together to resolve the issue before resorting to revocation of acceptance, which is an equitable remedy that should be resorted to only after attempts at adjustment have failed. I see I'm short on time, so in conclusion, the interpretation that 2608.1b incorporates a seller's right to cure, finds support in the plain and ordinary statutory language, the spirit and intent of the UCC, the more recent case law, and the committee comments to Section 608. We ask this Honorable Court to affirm the judgment of the Circuit Court of the Member of the Second District Appellate Court. Thank you all for your time. Thank you. Reply. Thank you. My clients would be happy to accept a reasonable cure from the family in the form of a substitutory to more, which brings us, of course, to the issue of what is cure, and I think we've briefed extensively. And in fact, the Bell IV case out of the Second District explains on its fact that cure is not necessarily what we pick. So I just have two very quick comments. The defendant keeps talking about a two-week period during which my clients in the dead phase three won't accept this. That is not accurate. Actually, it's not two weeks, it's two months, because the first cure occurred in June. What they want to do is they want to say, well, we fixed this one that was a separate and discrete event, and then there's another leak, and that's a separate and discrete event. But that's not how it should be looked at, because they didn't buy a roof. I encounter that argument all the time. We fixed the transmission. The radio doesn't work. Well, we fixed the radio. Then the steering wheel doesn't work. Well, we fixed the steering wheel. We complied with our warranty, they say, to which my answer is my clients did not buy the transmission separately or steering wheel separately or the radio separately. They bought a good, a car, or in this particular case, an RV, and it is that good, which is a composite of all parts, is that defective, and it's not being fixed. And so they didn't revoke it for two weeks. I question whether two weeks is an unreasonable time as a matter of law. When I bring my car for repairs, it's repaired by the end of the day. Why is that two weeks all of a sudden? It's such a short period of time. But where does it make? My clients wrote second or maybe third. There is a interplay here between the implied warranty and pure UCC, which are different things. When implied warranty is done, I don't get paid. UCC, non-fish eating, that's why I don't speak very well. But they were bringing it not to cure under 608. They were bringing it to fix it under the implied warranty and warranty. And I was very astonished to hear about that face as applied to my clients because what can be more in that face than for a seller to deny that it extended the implied warranty when, in fact, it did? They denied the existence of the implied warranty for years. If we want to talk about that face, that is that face because they had an obligation under the implied warranty, and they said they never had it. It was in their position in writing from their lawyers. That's that face. My people just wanted to spend their summer vacationing and when they couldn't tell me what. All of the things that were discussed before me, actually, most of them were factual methods, which, of course, precludes every judgment. What is seasonable? It would be a question of fact. Counsel brought five-way, and I did address it in my briefs because I knew it was coming. We argued in the court below that it's the first section of the second section. I finally convinced the trial judge to go to the second section. But if you read it, it has all kinds of interesting things. They have to give us notice. They have to assume that it would be okay for us. They have to do reasonable. There are all kinds of elements, and the record is silent. There is nothing in the record that they complied with five-way. How is that good face to bring up five-way when they didn't comply with it? They stopped from doing it. There are so many ways I can say plain reading of the text, and I conclude by saying plain reading of the text. People will have easier way going around the commercial code if they can rely on what's in front of them rather than doing massive amounts of legal research and have this ankle joint to knee joint to hip joint kind of convoluted analysis where subsection three kicks in either to 603 or maybe 508. Nobody knows whether it's five-way in the first section or five-way in the second section. It's too complicated. It's not simple, and it's not clear. And the reason we are here before you evinces that fact. At this point, it's neither clear nor simple, and we encourage you to bring some clarity to that issue. Thank you. Thank you. Case number 124285, Esoterra v. Vacationland, will be taken under advisement as agenda number seven. Mr. Stiefvanoff, Mr. Porter, we thank you for your arguments. Today you are excused.